IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FIRST MIDWEST BANK, | ) | **08 C 947** |
| Plaintiff, | ) | |
| v. | ) No. | |
| SEAN D. OJA, an individual; | ) | **JUDGE KENDALL** |
| ELIZABETH A. OJA, an individual; | ) | **MAGISTRATE JUDGE VALDEZ** |
| Defendants. | ) | |

## COMPLAINT TO FORECLOSE FIRST PREFERRED MORTGAGE OF VESSEL

NOW COMES Plaintiff First Midwest Bank, a duly organized and existing corporation under and by virtue of the laws of the United States of America, chartered to make loans of money secured by mortgages, and pursuant to the Ship Mortgage Act, 46 U.S.C. section 31301, et seq., by and through its attorneys, Stitt, Klein, Daday, Aretos & Giampietro alleges as follows:

### Facts

1. Jurisdiction of this court is appropriate pursuant to the Ship Mortgage Act 46 U.S.C. section 31301, et seq..

2. First Midwest is a Financial Institution duly authorized to do business in Illinois.

3. On or about June 5, 1998, the Defendants executed a written Promissory Note with First Midwest to finance the purchase of the following items: a 1998 400 Trojan Express, Hull Identification #CDRT1027B898; and 1998 twin Mercury 8.2L engines, serial numbers OL006269 and OL006270 (hereinafter referred to as the "property"), which provides among other things for payment of the balance due in installment payments. Attached hereto and incorporated herein as Exhibit "A" is a copy of said Promissory Note.

4. On or about June 5, 1998 the Defendants executed a First Preferred Mortgage of Vessel. Attached hereto and incorporated herein as Exhibit "B" is a copy of the Mortgage. Attached hereto and incorporated herein as Exhibit "C" is a copy of the Consumer Security Agreement.

5. A Financing Statement naming Plaintiff as a Secured Party was filed with the Illinois Secretary of State in accordance with the Uniform Commercial Code.

6. The Note required Defendant to make monthly payments in the amount of $1,594.27 and provides that, in the event of a default in the payment of any installment required therein, First Midwest could declare the entire amount of said Note immediately due and payable.

7. First Midwest has not received payments due under the agreement for October 19, 2006, and each month thereafter, in the monthly installment amount of $1,594.27.

8. First Midwest has performed all terms and conditions required of it to be performed under the Note.

## Count I – Foreclosure of Ship Mortgage

9. Plaintiff files this complaint to foreclose the Mortgage of Vessel hereinafter described, and joins the following persons as Defendant(s):

    (a)    Sean D. Oja, an individual.

    (b)    Elizabeth A. Oja, an individual.

10. Information concerning Mortgage:

    (a)    Nature of Instrument: First Preferred Mortgage of Vessel.

    (b)    Date of Mortgage: July 9, 1998.

    (c)    Name of Mortgagors: Sean D. Oja and Elizabeth A. Oja.

    (d)    Name of Mortgagee: First Midwest Bank, N.A.

  (e)  Place of recording: National Vessel Documentation Center.

  (f)  Identification of Record: Book 98-64, Page 40.

  (g)  Amount of original indebtedness: $190,075.00.

  (h)  Present title holders of vessel: Sean D. Oja and Elizabeth A. Oja.

  (i)  Names of persons, in addition to said owner (but excluding any Unrecorded Claimants) who are joined as Defendants, and whose equitable rights to redeem are therein sought to be foreclosed:

    1) Sean D. Oja;

    2) Elizabeth A. Oja.

  (j)  Statement as to default and amount now due: The mortgagors, Sean D. Oja and Elizabeth A. Oja, have defaulted on the payment due for October 19, 2006 and each subsequent payment thereafter, causing the Bank to accelerate the note. The Note has been accelerated and there is due First Midwest Bank principal of $144,979.12. The arrearages are $7,227.47 as of February 4, 2008, plus late charges of $1,317.62, plus repossession fees of $6,294.50, plus other fees of $666.50, plus attorney's fees and costs and any other advances which the Mortgagee elects to make pursuant to the Note and Mortgage.

  (k)  Unpaid balance calculated as of February 4, 2008: $160,485.21.

Per diem interest after that date: $18.39.

  (l)  Present title holder of vessel: Sean D. Oja and Elizabeth A. Oja.

  (m)  Names of persons, in addition to said owner (but excluding any Unrecorded Claimants) who are joined as Defendants:

    1) Sean D. Oja.

        2)    Elizabeth A. Oja.

(n)    Names of persons personally liable for deficiency, if any:

        1)    Sean D. Oja.

        2)    Elizabeth A. Oja.

(o)    Capacity in which Plaintiff brings suit: Owner and holder of Note and Mortgage.

(p)    Facts in support of request for attorney's fees and of costs and expenses, if applicable: The mortgagor has defaulted in payment of the indebtedness secured by the Mortgage and Plaintiff has been required to employ counsel and to institute this action.

(q)    Facts in support of a request for appointment of a receiver, and the identity of such receiver if sought: The mortgagor has defaulted on the mortgage and note by failing to make the payments due for October 19, 2006 and each subsequent payment thereafter.

(r)    Facts in support of a request that a United States Marshal take possession of the vessel, if sought: None. Plaintiff has obtained possession of the vessel.

(s)    Plaintiff does not offer to mortgagor to accept title to the vessel in satisfaction of all indebtedness and obligations secured by the Mortgage without judicial sale.

11. Upon information and belief, the property is and will remain within the jurisdiction of this Court throughout the pendency of this action.

12. First Midwest has demanded repayment from the Defendant, and the Defendant has failed and refused to do so.

## **REQUEST FOR RELIEF**

Plaintiff requests:

(i)  A judgment to foreclose said Mortgage.

(ii)  A judgment in rem in admiralty against the mortgagor for the property.

(iii)  An order appointing a receiver, if sought, authorized by this Court to operate the mortgaged vessel in which case the court shall retain in rem jurisdiction over the vessel.

(iv)  An order directing a United States Marshal, if sought, to take possession of the mortgaged vessel, even if in the possession or under the control of a person claiming a possessory common law lien.

(v)  Such other and further relief as equity may require.

## **Count II - Deficiency**

1 - 12.  First Midwest realleges and incorporates by references Paragraphs 1 through 12 of Count I as Paragraphs 1 through 12 of this Count II.

13.  Pursuant to the terms of the Note, Defendants are personally liable for any deficiency in full payment of that indebtedness.

14.  First Midwest has not received payments due under the agreement for October 19, 2006, and each month thereafter, in the monthly installment amount of $1,594.27.

15.  Defendants have defaulted under the terms of the Note by failing to make the monthly payments required to be made.  First Midwest has demanded payment of the default from the Defendants, and the Defendants have failed and refused to do so.

16. Pursuant to the terms of the Note, First Midwest is entitled to any unsatisfied balance remaining on the account after resale of the property.

17. Pursuant to the terms of the Note, Defendants are obligated to pay all late charges and other costs and expenses of collection, including attorney's fees.

18. After applying all just credits and deductions, there is a balance due and owing on Defendants' account with Plaintiff in the sum of $160,485.21 as of February 4, 2008, and interest continues to accrue under the terms of the Note.

WHEREFORE, First Midwest Bank prays that this Court grant the following relief against the Defendants:

1. A judgment in personam in admiralty against the mortgagors jointly and severally for the amount of any outstanding indebtedness or any deficiency in full payment of that indebtedness remaining as calculated after resale of the property;

2. A personal judgment for deficiency against the mortgagors jointly and severally for the amount of any outstanding indebtedness or any deficiency in full payment of that indebtedness remaining as calculated after resale of the property;

3. A judgment for attorney's fees, costs and expenses;

4. For interest at the contract rate to the date of judgment;

5. For any other relief that this Court deems fair and just.

Respectfully submitted,

FIRST MIDWEST BANK,

By:_____
One of its attorneys

Stitt, Klein, Daday, Aretos & Giampietro, LLC

121 South Wilke Road, Ste. 500
Arlington Heights, IL 60005-1528
847-590-8700
Attorney No. 3127015

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $190,075.00 | 06-05-1998 | 06-19-2018 | 1500179611 | A6B0 | MC | | 1764 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** SEAN D. OJA
ELIZABETH A. OJA
2307 MEADOWLAKE DRIVE
NAPERVILLE, IL 60564

**Lender:** FIRST MIDWEST BANK, NATIONAL ASSOCIATION
PLAINFIELD
300 PARK BOULEVARD, SUITE 400
ITASCA, IL 60143

**Principal Amount:** $190,075.00    **Initial Rate:** 7.990%    **Date of Note:** June 5, 1998

**PROMISE TO PAY.** I promise to pay to FIRST MIDWEST BANK, NATIONAL ASSOCIATION ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Hundred Ninety Thousand Seventy Five & 00/100 Dollars ($190,075.00), together with interest on the unpaid principal balance from June 5, 1998, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, I will pay this loan in 240 payments of $1,594.27 each payment. My first payment is due July 19, 1998, and all subsequent payments are due on the same day of each month after that. My final payment will be due on June 19, 2018, and will be for all principal and all accrued interest not yet paid. Payments include principal and interest. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Weekly Average Yield on United States Treasury Securities, Adjusted to a Constant Maturity of (5) Five Years (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to me. Lender will tell me the current Index rate upon my request. I understand that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each fifth year anniversary. The Index currently is 5.570% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 2.420 percentage points over the Index, resulting in an initial rate of 7.990% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) increase my payments to ensure my loan will pay off by its original final maturity date, (b) increase my payments to cover accruing interest, (c) increase the number of my payments, and (d) continue my payments at the same amount and increase my final payment.

**PREPAYMENT.** I agree that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, I may pay all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, they will reduce the principal balance due and may result in me making fewer payments.

**LATE CHARGE.** If a payment is **10 days or more late, I will be charged 5.000% of the regularly scheduled payment.**

**DEFAULT.** I will be in default if any of the following happens: (a) I fail to make any payment when due. (b) I break any promise I have made to Lender, or I fail to comply with or to perform when due any other term, obligation, covenant, or condition contained in this Note or any agreement related to this Note, or in any other agreement or loan I have with Lender. (c) Any representation or statement made or furnished to Lender by me or on my behalf is false or misleading in any material respect either now or at the time made or furnished. (d) I die or become insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws. (e) Any creditor tries to take any of my property on or in which Lender has a lien or security interest. This includes a garnishment of any of my accounts, including deposit accounts, with Lender. (f) Any of the events described in this default section occurs with respect to any guarantor of this Note. (g) Lender in good faith deems itself insecure.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then I will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 6.420 percentage points over the Index. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if I do not pay. I also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law. **This Note has been delivered to Lender and accepted by Lender in the State of Illinois. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of WILL County, the State of Illinois. This Note shall be governed by and construed in accordance with the laws of the State of Illinois.**

**DISHONORED ITEM FEE.** I will pay a fee to Lender of $25.00 if I make a payment on my loan and the check or preauthorized charge with which I pay is later dishonored.

**RIGHT OF SETOFF.** I grant to Lender a contractual security interest in, and hereby assign, convey, deliver, pledge, and transfer to Lender all my right, title and interest in and to, my accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts I may open in the future, excluding however all IRA and Keogh accounts, and all trust accounts for which the grant of a security interest would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

**COLLATERAL.** This Note is secured by A PREFERRED SHIP MORTGAGE DATED JUNE 5, 1998 ON A 1998 400 TROJAN EXPRESS HULL #CDRT1027B898 AND A CONSUMER SECURITY AGREEMENT DATED JUNE 5, 1998 BETWEEN BORROWER AND LENDER.

**ADDITIONAL TERMS.** THE PAYMENT AMOUNT WILL BE RECALCULATED EVERY 5 YEARS ON JUNE 19TH FOLLOWING ANY INTEREST RATE CHANGE ON JUNE 19TH. THE NEW PAYMENT AMOUNT IS TO BE EFFECTIVE FOR THE FOLLOWING 60 MONTHS BEGINNING JULY 19TH. RENEWAL RATE WILL BE BASED ON THE WEEKLY AVERAGE YIELD ON THE FIVE YEAR UNITED STATES TREASURY SECURITIES PLUS 2.50%.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

**INSURANCE.** Unless I provide Lender with evidence of the insurance coverage required by my agreement with Lender, Lender may purchase insurance at my expense to protect Lender's interests in the collateral. This insurance may, but need not, protect my interests. The coverage that Lender purchases may not pay any claim that I make or any claim that is made against me in connection with the collateral. I may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that I have obtained insurance as required by our agreement. If Lender purchases insurance for the collateral, I will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to my total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance I may be able to obtain on my own.

**PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE NOTE.**

**BORROWER:**

X _____[signature]_____
   SEAN D. OJA

X _____[signature]_____
   ELIZABETH A. OJA

Variable Rate. Installment.    LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.25 (c) 1998 CFI ProServices, Inc. All rights reserved. [IL-D20 OJA.LN C3.OVL]

EXHIBIT A

Blumberg No. 5119

Case 1:08-cv-00947 Document 1 Filed 02/14/2008 Page 9 of 17

# FIRST PREFERRED MORTGAGE OF VESSEL

on the vessel(s) " __WHEN IN ROAM__ "   Home Port __West Virginia__

Official Number or Hull ID# __CDRT1027B898__

dated __July 9, 1998__    Amount of Mortgage $ __190,075.00 + interest__

and made by __Sean D. and Elizabeth A. Oja__

__2307 Meadow Lake__

__Naperville, Il 60564__    (hereinafter called "OWNER") to

__First Midwest Bank, N.A.__

__300 Park Blvd__

__Itasca, Illinois 60143__    (hereinafter called "MORTGAGEE")

## WITNESSETH

WHEREAS, the Maker, Owner herein, is the sole owner of the whole of the vessel hereinbefore named and described, (if more than one vessel is mortgaged hereunder, the term "VESSEL" means each such vessel) and is justly indebted to the Mortgagee as evidenced by a Promissory Note/ Loan Agreement/ Retail Installment Contract/ Note and Security Agreement (any of which is hereinafter called "NOTE") in the amount indicated.    Date of "NOTE" __6/5/98__

AND WHEREAS, Owner has agreed to give this Mortgage as security and has authorized and directed the execution and delivery hereof;

NOW, THEREFORE, in consideration of the promises and for other good and valuable consideration, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the vessel(s) described above, together with masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document being deemed included herein by reference.

TO HAVE AND TO HOLD all and singular the above-described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Owner agrees to pay said indebtedness and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject hereto.

## ARTICLE I - PARTICULAR COVENANTS OF OWNER

Owner represents, warrants and covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her Certificate of Documentation, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of said Note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of its incorporation and authorized to do business and in good standing in any other State where Owner regularly does business.

EXHIBIT B

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever, except as may herein below be specified, and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transactions.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured, and in at least the amount of the unpaid balance of the Note, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear; all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation of or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof, nor remove the vessel from the limits of the territorial waters of the United States save on voyages with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

5. Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than to the Mortgagee or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records; and shall certify quarterly and if Mortgagee requests, monthly that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein. Owner shall not charter the vessel except to persons and for uses lawful for American vessels and then only provided the insurance required hereunder be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or change ownership or control, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurances as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1(b) of Article II.

## ARTICLE II - DEFAULT

1. In any one or more of the following events, hereinter termed "Events of Default", viz:

(a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or breach of any warranty of Owner herein or in the Note or the due and punctual performance of any provision of Article I hereof, or attempt to violate Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein or in the Note;

(b) Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every case, Mortgagee may:

(A) Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith;

(B) Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder; and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C) Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without having the vessel present, and Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate provided in the Note; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the Note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said Note and all damages sustained by Mortgagee because of default, shall be repaid by Owner on demand, with interest on all such amounts at the rate provided in the Note; and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgage shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

-3-

## ARTICLE III – POSSESSION UNTIL DEFAULT

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

## ARTICLE IV – SUNDRY PROVISIONS

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein, "his" shall mean "their".

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name.

*Karin I. Kogerup*
~~Karin I. Kogerup,~~ Attorney in Fact For
Sean D. and Elizabeth A. Oja

## ACKNOWLEDGEMENT

INDIVIDUAL MORTGAGOR(S)

State of __Illinois__    County of __Lake__

On this __9th__ day of __July__, 19__98__, before me personally came and appeared __Karin I. Kogerup, Attorney in Fact For Sean D. and Elizabeth A. Oja__

to me known to be the person(s) described in and who executed the foregoing Mortgage, and he (they) acknowledged to me that he (they) executed and delivered the same as his (their) free act and deed.

STAMP OR SEAL
"OFFICIAL SEAL"
IRMGARD McNALLY
Notary Public, State of Illinois
My Commission Expires 02/22/01

NOTARY PUBLIC
My commission expires: _____

CORPORATE MORTGAGOR

State of _____    County of _____

On this ____ day of _____, 19____, before me personally came and appeared _____

to me known to be the same individual who signed the foregoing instrument on behalf of _____ and acknowledged the within instrument to be the free act and deed of the said corporation.

STAMP OR SEAL        NOTARY PUBLIC
                     My commission expires: _____

# CONSUMER SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $190,075.00 | 06-05-1998 | 06-19-2018 | 1500179611 | A6B0 | MC | | 1764 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** SEAN D. OJA
ELIZABETH A. OJA
2307 MEADOWLAKE DRIVE
NAPERVILLE, IL 60564

**Lender:** FIRST MIDWEST BANK, NATIONAL ASSOCIATION
PLAINFIELD
300 PARK BOULEVARD, SUITE 400
ITASCA, IL 60143

EXHIBIT C

THIS CONSUMER SECURITY AGREEMENT is entered into between SEAN D. OJA and ELIZABETH A. OJA (referred to below as "I"); and FIRST MIDWEST BANK, NATIONAL ASSOCIATION (referred to below as "Lender").

**GRANT OF SECURITY INTEREST.** To secure the Indebtedness described below (including all obligations under the Note and this Agreement), I grant to Lender a security interest in all of the Property described below. I understand that the following statements set forth my responsibilities, as well as Lender's rights, concerning the Property. I agree as follows:

**DEFINITIONS.** When the following words are used in this Agreement, I understand they will have the following meanings:

**Agreement.** The word "Agreement" means this Consumer Security Agreement, as this Consumer Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Consumer Security Agreement from time to time.

**I.** The word "I" means each person who signs this Agreement (other than Lender, if Lender signs this Agreement), including SEAN D. OJA and ELIZABETH A. OJA.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note described below, including all principal and interest, together with all other amounts and costs and expenses for which I am responsible under this Agreement or under any other agreement with Lender pertaining to the loan. In addition to the Note, this Agreement secures all amounts I owe to Lender, whether owed now or later. This means that every loan I have now or obtain later with Lender is secured by this Agreement. This Agreement also secures all other amounts and obligations that I may owe to Lender (such as an overdraft on a checking account).

**Lender.** The word "Lender" means FIRST MIDWEST BANK, NATIONAL ASSOCIATION, its successors and assigns. The words "successors or assigns" mean any person or company which acquires all or any part of Lender's interest in the Note.

**Note.** The word "Note" means the promissory note or credit agreement executed by me in the principal amount of $190,075.00 dated June 5, 1998, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means the following described property in which I am giving Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

### 1998 TWIN MERCURY 8.2L ENGINES SERIAL #'s OL006269 AND OL006270

The word "Property" also includes all accessions, attachments, accessories, replacements and additions to the property described above (such as tires or batteries attached to a car, a motor attached to a boat, or appliances and fixtures attached to a mobile home), whether added now or later, together with all proceeds (including insurance proceeds and refunds of insurance premiums) if any, and sums due from a third party who has damaged or destroyed the Property or from their insurer, whether due to judgment, settlement or other process. Despite any other provision of this Agreement, Lender is not granted, and will not have, a nonpurchase money security interest in household goods, to the extent such a security interest would be prohibited by applicable law. In addition, if because of the type of any Property, Lender is required to give a notice of the right to cancel under Truth in Lending for the Indebtedness, then Lender will not have a security interest in such Property unless and until such a notice is given.

**RIGHT OF SETOFF.** I grant to Lender a contractual security interest in, and hereby assign, convey, deliver, pledge and transfer to Lender, all my right, title and interest in and to all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which the grant of a security interest would be prohibited by law. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**REPRESENTATIONS AND PROMISES WITH RESPECT TO THE PROPERTY.** I represent and promise to Lender that:

**Ownership.** I am the lawful owner of the Property. The Property is free and clear of all loans, liens, security interests, mortgages, claims, and encumbrances except for those I have disclosed to Lender in writing prior to my signing this Agreement. I agree to defend Lender's rights in the Property against the claims and demands of all persons. I will not allow any other liens on the Property, even if they are junior to Lender's lien. I have the full authority and right to enter into this Agreement and to grant a security interest in the Property to Lender.

**No Sale.** Without Lender's prior written consent, I will not sell, lease, transfer, borrow against, or otherwise dispose of any of my rights in the Property unless and until all the Indebtedness is paid in full.

**Location of Property.** I agree to keep the Property at my address shown above, unless Lender tells me I can move it. If I move from my address shown above to another location within the same state, I may move the Property to my new address, but only if I give Lender the new address in writing prior to my moving. In any event, I agree to keep Lender informed at all times of my current address.

**Maintenance and Insurance.** I will keep the Property in good condition and repair. If the Property is damaged, lost or stolen, I immediately will inform Lender. I will keep the Property fully insured against all loss or damage by fire, theft, collision, and such other hazards as Lender may require from time to time. The insurance will be on terms, including deductible provisions and endorsements, that are satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such notice. I understand I may obtain insurance from any insurance company I may choose that is reasonably acceptable to Lender. I will provide Lender with the original insurance policy, or other proof satisfactory to Lender of the insurance coverage, together with all endorsements required by Lender, including an endorsement naming Lender as the party to whom all losses will be paid. If Lender receives a refund of any insurance premiums, I agree that the refund is Property covered by this Agreement. Lender may apply the refund to payment of any of the Indebtedness. Any insurance policy which I deliver to Lender will be held to secure payment of the Indebtedness. Until all Indebtedness is paid in full, Lender is authorized, but shall not be required, to file any proof of loss, adjust any loss, receive and receipt for any sum payable, surrender any policy, discharge and release any insurer, endorse any loss or refund check or draft, and in general do in my name, or otherwise, any and all things with respect to the insurance or any insurance proceeds.

**Licensing and Governmental Regulations.** I agree to keep the Property licensed at all times as required by all applicable state and federal

06-05-1998  
Loan No 1500179611

Case 1:08-cv-00947   Document 1   Filed 02/14/2008   Page 15 of 17

**CONSUMER SECURITY AGREEMENT**  
(Continued)

Page 2

laws. In addition, I agree to pay when due all license fees, taxes and assessments relating to the Property or the use of the Property. I further agree that the Property will not be used for any unlawful purpose or in violation of any statute, law, ordinance, or regulation relating to the use, operation, or control of the Property.

**Right to Inspect the Property.** I authorize Lender to inspect or examine the Property, wherever located, at any reasonable time, and I will aid Lender in making any such inspection.

**LENDER'S EXPENDITURES.** If I fail (a) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims; (b) to provide required insurance; or (c) to make repairs to the Property, Lender may do so. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by me. All such expenses will become a part of the Indebtedness and, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. The Property also will secure payment of these amounts.

**DEFAULT. I will be in default if any of the following happens: (a) Payment Default.** I fail to make any payment when due on the Indebtedness. **(b) Break Other Promises.** I break any promise made to Lender or fail to perform promptly at the time and strictly in the manner provided in this Agreement or in any other agreement or loan with Lender. **(c) False Statements.** Any representation or statement made by me to Lender is false in any material respect. **(d) Death or Insolvency.** I die or become insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws. **(e) Taking of The Property.** Any creditor or governmental agency tries to take any of the Property. This includes the taking or garnishment of any of my accounts with Lender. **(f) Property Damage or Loss.** The Property is lost, stolen, substantially damaged, sold, or borrowed against. **(g) Guarantors.** Any of the events described above in this default section happen to any guarantor of any of the Indebtedness. **(h) Lender's Insecurity.** Lender in good faith deems itself insecure.

**LENDER'S RIGHTS.** I may keep and use the Property so long as I am not in default under this Agreement. **If I am in default, this is what Lender may do, in addition to any other rights Lender may have: (a) Accelerate Indebtedness.** Lender may, subject to any cure and notice provisions required by law, declare all Indebtedness immediately due and payable, without notice. **(b) Other Rights and Remedies.** In addition, Lender will have all the rights of a secured party under the Uniform Commercial Code and other applicable law. This means, among other rights, that Lender may enter upon the premises at the address shown above and take the Property peaceably and sell it. Lender may also, to the extent permitted by law, enter peaceably upon other premises for the purpose of retaking the Property, and I consent to such entry. If the Property contains any goods not covered by this Agreement at the time of repossession, I agree that Lender may take such goods, provided that Lender makes reasonable efforts to return them to me after repossession. If Lender asks me to do so, I will gather the Property and make it available to Lender at a place reasonably convenient to both Lender and me. **(c) Application of Proceeds.** If Lender sells the Property, Lender will apply the "net proceeds" of the sale to reduce the amount owed Lender. "Net proceeds" means the sale price less the expenses of repossession, repair, sale, and as provided below, attorneys' fees and other collection expenses. I agree that, to the extent permitted by law, I will owe Lender any difference between the amount of the Indebtedness and the net proceeds Lender receives from the sale of the Property. Lender may hold all Property consisting of accounts with Lender, and Lender may, without notice or demand of any kind, apply the funds in these accounts to pay all or part of the Indebtedness. **(d) Notice.** Unless the Property threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give me reasonable notice of the time and place of any public sale or of the date after which any private sale or any other intended disposition of the Property is to be made. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments and Interpretation.** (a) What is written in this Agreement is my entire agreement with Lender concerning the Property. This Agreement may not be changed except by another written agreement between us. (b) If more than one person signs below, our obligations are joint and several. This means that the words "I," "me," and "my" mean each and every person or entity signing this Agreement, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. (c) The names given to paragraphs or sections in this Agreement are for convenience purposes only. They are not to be used to interpret or define the provisions of this Agreement. (d) I agree that this Agreement is the best evidence of my agreements with Lender. If a court finds that any provision of this Agreement is not valid or should not be enforced, that fact by itself will not mean that the rest of this Agreement will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Agreement even if a provision of this Agreement may be found to be invalid or unenforceable.

**Applicable Law. This Agreement has been delivered to Lender and accepted by Lender in the State of Illinois. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of the State of Illinois. This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.**

**Attorneys' Fees and Other Costs.** If Lender hires or pays money to someone else to help enforce this Agreement or to collect any Indebtedness, I will pay that amount. This amount includes Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. I will also pay court costs, in addition to all other sums provided by law. This Agreement also secures all of these amounts.

**Financing Statements.** At Lender's request, I will promptly sign all other documents, such as financing statements and certificates of title, to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. I will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. I irrevocably appoint Lender as my attorney-in-fact to execute financing statements and documents of title in my name and to execute all documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If I change my name, or if the name of any person granting a security interest under this Agreement changes, I will promptly notify the Lender of such change.

**Notices.** I understand that all notices when required to be given under this Agreement, whether from Lender to me or from me to Lender, must be given in writing. Notices may be sent by telefacsimile (unless otherwise required by law), and will not be effective until actually delivered, or when deposited with a nationally recognized overnight courier or when deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any person may change his or her address for notices under this Agreement by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. I agree that, to the extent permitted by law, if there is more than one person signing this Agreement, Lender may give notice to any one of us and that will be considered as giving notice to all of us unless the law requires notice to all signers. It will be our responsibility to tell the others of the notice from Lender. For this purpose, I agree to keep Lender informed at all times of my current address.

**Waiver.** I understand Lender will not give up any of its rights under this Agreement unless it does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of its rights, that does not mean I will not have to comply with the other provisions of this Agreement. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender

06-05-1998
Loan No 1500179611

Case 1:08-cv-00947    Document 1    Filed 02/14/2008    Page 16 of 17

**CONSUMER SECURITY AGREEMENT**
(Continued)

Page 3

consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**I, AND EACH OF US, HAVE READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS CONSUMER SECURITY AGREEMENT AND AGREE TO ITS TERMS. THIS AGREEMENT IS DATED JUNE 5, 1998.**

**GRANTOR:**

X _____    X _____
SEAN D. OJA                    ELIZABETH A. OJA

**LENDER:**
FIRST MIDWEST BANK, NATIONAL ASSOCIATION

By: _____
Authorized Officer

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.25 (c) 1998 CFI ProServices, Inc. All rights reserved. [IL-E30 OJA.LN C3.OVL]